**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COACH, INC. and COACH SERVICES, INC.

            Plaintiffs,

v.

YOUNES CORPORATION, INC. d/b/a Citgo Mini Mart, , Detroit, MI 48227 13601 W. McNichols Street

and

HASAN Z. YOUNES

and

Unknown Defendants 1-10 (JOHN DOES),

            Defendant(s).

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No. 2:11-cv-11559-JAC-MAR

Honorable Julian Abele Cook

| | |
|---|---|
| Joe Sadler (P71829)<br>Katherine L. Brooks (P74511)<br>WARNER NORCROSS & JUDD LLP<br>900 Fifth Third Center<br>111 Lyon Street, N.W.<br>Grand Rapids, MI  49503-2487<br>616-752-2271<br>jsadler@wnj.com<br>kbrooks@wnj.com<br>*Attorneys for Plaintiffs* | Samer Mohamed Fakih (P68876)<br>FAKIH & ASSOCIATES PLLC<br>16030 Michigan Avenue, Suite 200<br>Dearborn, MI  48126<br>313-846-6300<br>sfakih@fakihlaw.com<br>*Attorney for Defendants Younes* |

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Coach Inc. and Coach Services Inc. ("Coach") respond to Hasan Younes' Motion for Summary Judgment as follows:

**Introduction**

Hasan Younes seeks to avoid liability for counterfeiting done with his express or implied permission, merely because he denies knowledge of the counterfeiting. All the material "facts" in Mr. Younes' Motion are established through his self-interested testimony. His credibility is a question for the jury, and not appropriate for resolution at the summary judgment stage. With respect to Mr. Younes' personal liability, it is well-established that the owner or manager of a company is personally liable for violations of the Lanham and Copyright Acts that take place at his direction or with his permission. His attempts to shed responsibility by hiding behind the corporate form fail. Mr. Younes' personal liability is a question of fact for the jury, and therefore his Motion for Summary Judgment should be denied.

**Background**

Mr. Younes is the sole officer, director and shareholder of Younes Corporation. (Ex. A, Younes Dep. 6 & 29, March 16, 2012.) The corporation's business was operating gas stations. (*Id*. at 6-7.) One such station was a Citgo station located at 13601 W. McNichols Street in Detroit. The manager of the Citgo, Mr. Mallah, is Mr. Younes' brother-in-law. (*Id*. at 11 & 16.) Mr. Mallah ran the day-to-day operations of the station. (Ex. B, Mallah Dep. 7, March 16, 2012.)

At some point, the Citgo station began selling counterfeit Coach handbags. The sales occurred, at minimum, during a five-month period between December 2010 and April 2011. (Ex. B, Mallah Dep. 11 & 25-26.) Mr. Mallah allegedly bought the bags from a street vendor without Mr. Younes' knowledge in December 2010. (*Id*. at 11.) However, Mr. Younes admits that he became aware of the sales soon after they started. (Ex. A, Younes Dep. 24, March 16,

2012.)  He made no inquiry as to the legitimacy or origin of the product and did nothing to stop their sale.  (*Id*. at 24-25.)

Coach's undercover representative visited the station in January 2011, and discovered dozens of counterfeit handbags for sale.  Mr. Mallah claims that he stopped selling counterfeits in April 2011, at Mr. Younes' direction.  (*Id*. at 26.)  The sales were allegedly stopped as a result of the instant lawsuit.  (Ex. A, Younes Dep., 26-27, March 16, 2012.)  Mr. Mallah allegedly "returned" the remainder of the Coach goods to the vendor, who subsequently disappeared.  (*Id*. at 27-28; Ex. B, Mallah Dep. 27, March 16, 2012.)

Mr. Younes is a college-educated and successful man who owns, in addition to the gas station, several insurance agencies.  (Ex. A, Younes Dep. 5 & 7-8, March 16, 2012.)  Mr. Mallah is comparatively undereducated, and, prior to his alleged termination, his only source of income was working for his brother-in-law, Mr. Younes.  (Ex. B, Mallah Dep. 6, March 16, 2012.)  Mr. Mallah's wife, Younes' sister, also worked for Mr. Younes and therefore depended on him for income.  (Ex. C, D. Mallah Dep. 7-8, March 16, 2012.)

## Argument

As Mr. Younes concedes, he is directly liable in his personal capacity for any trademark or copyright infringement done at his direction or with his knowledge.  *See Days Inn Worldwide, Inc. v. Adrian Motel Co.*, No. 07-13523, 2009 WL 3199882, at *11-12 (E.D. Mich., Sept. 30, 2009) (holding that it "is well established law that employees and corporate officers can be held individually liable under the Lanham Act when the employee or corporate officer personally takes part in the infringing activity or directs others to do so") (*citing Two Men & a Truck/Int'l, Inc. v. Two Men & a Truck/Kalamazoo*, No. 5:94-CV-162, 1995 WL 549278, at *4 (W.D. Mich. July 24, 1995); *see also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*

§ 25:24 (4th ed. 2005).  Even "a lack of participation in the infringement will not insulate a corporate officer from liability where he had 'the right and ability to supervise the infringing activity and also had a direct financial interest in such activities.'"  *Days Inn Worldwide*, at \*12 (*quoting L & L While Metal Casting Corp. v. Cornell Metal Specialties Corp.,* 353 F. Supp. 1170, 1175 (E.D.N.Y. 1972); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971)).

Mr. Younes admits that he knew that purses were being sold at his gas station, and further admits that sales conducted with his knowledge or approval would expose him to personal liability.  He denies only that he had knowledge of the bags' counterfeit nature.  (Ex. A, Younes Dep. 24, March 16, 2012.)  The credibility of this testimony, however, is a jury question.  A jury would be free to disbelieve his denial, particularly on this record.  A jury could reasonably find that Mr. Younes knew that the bags were counterfeit and either directed his employees to sell them, or tacitly approved their sale by failing to stop it, based on facts including:

- Purses are not ordinarily sold at a gas station, and had not been sold at the Citgo station prior to December 2010.  (Ex. A, Younes Dep. 24, March 16, 2012.)  It would be reasonable for the owner of a gas station to question the origin and nature of such an unusual product.  Yet, Mr. Younes allegedly thought nothing of them and conducted no inquiry or investigation into their origins.  (*Id*. at 24-25.)  Mr. Younes permitted the sale of these items and did nothing to stop it until he was sued by Coach.

- Mr. Younes is an educated man, who owns and runs a number of businesses. (Ex. A, Younes Dep. 5 & 8, March 16, 2012.)  He could reasonably be expected to have knowledge of the Coach brand, which is known throughout the world and sold in malls and department stores throughout Michigan.  He may also reasonably be expected to know of the existence of counterfeit products and the fact that such sales are illegal.

- The most persuasive evidence in the case – the counterfeit bags possessed by the Defendants when they were served with this lawsuit – were disposed of at Mr. Younes' instructions.  (Ex. A, Younes Dep. 26-27, March 16, 2012.)  Rather than preserve them as evidence, as he was obliged to do under the Federal Rules, Mr. Younes allegedly ordered Mr. Mallah to dispose of them.  A jury would be permitted to draw adverse inferences from such spoliation.  For example, the jury

      could reasonably infer that the counterfeit Coach marks were visible to Mr. Younes upon his inspection of the purses, making his claims of ignorance unlikely.

- Mr. Younes is the sole shareholder, officer, and director of Younes Corporation. (Ex. A, Younes Dep. 6 & 29, March 16, 2012.) At no time did the corporation employ more than two or three people. (*Id*. at 10.) Mr. Younes' alleged failure to supervise these few employees, such that criminal activity could occur over a half-year period without his knowledge, is questionable and suspicious. (*Id*. at 10 & 24-25.)

- Mr. Younes has personal assets and is collectible. The corporation, Younes Corp., does no business and has no assets, because Mr. Younes has taken or disposed of the assets. (Ex. A, Younes Dep. 12, March 16, 2012.) Mr. Mallah, the brother-in-law of Mr. Younes, has been unemployed for a year and is essentially uncollectible. (Ex. B, Mallah Dep. 6, March 16, 2012.) A jury could conclude that the Defendants' testimony is calculated to exonerate the only Defendant with money to pay a judgment, and therefore not credible.

- Mr. Younes and Mr. Mallah, the alleged wrongdoer, were related by marriage. (Ex. A, Younes Dep. 16, March 16, 2012.) At various times, Mr. Younes has employed both Mr. Mallah and his wife, Mr. Younes' sister. (*Id*. at 11.) Mr. Younes has, in the past, been Mr. Mallah's sole source of income, of which he now has none. (Ex. B, Mallah Dep. 6, March 16, 2012.) Mr. Mallah has both financial and personal reasons to conceal Mr. Younes' involvement and protect Mr. Younes' personal assets.

- Due to the close personal relationship between Mr. Mallah and Mr. Younes, they have had ample opportunity to discuss this case and to tailor their testimony in a way favorable to Mr. Younes.

Evaluating the credibility of witness testimony is the jury's responsibility. This is particularly true where, as here, the witnesses have a direct financial interest in the matter. "The fact that a witness is interested in the result of a suit is sufficient to require the credibility of his testimony to be submitted to a jury as a question of fact." *Spero-Nelson v. Brown*, 175 F.2d 86, 89-90 (6th Cir. 1949) (*citing Sonnentheirl v. Christian Moerlein Brewing Co.*, 172 U.S. 401, 408 (1899)); *see also Dyer v. MacDougall*, 201 F.2d 265, 268-69 (2d Cir. 1952) (discussing flexibility of trier of fact when weighing credibility of witnesses, especially interested witnesses).

The sole evidence offered by Mr. Younes on the issue of his personal knowledge is his own testimony and the testimony of his co-conspirator, Mr. Mallah.[1] Both men have a personal and financial interest in the outcome of this litigation. There are good reasons to believe that Mr. Younes directed Mr. Mallah to sell counterfeits, or otherwise blessed the practice by permitting it to continue after he found out about it.[2] Likewise, there are good reasons to believe that Mr. Mallah is simply taking the blame in order to insulate Mr. Younes' personal assets from judgment and encourage Coach to abandon the suit. Based on the above factors, a jury could reasonably disbelieve Mr. Younes' and Mr. Mallah's testimony. So long as a reasonable jury could find against Mr. Younes, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-9 (1986).

This result is consistent with sound policy. Counterfeiters such as Mr. Younes and Mr. Mallah frequently do not keep written records of their activities and do not discuss their business in writing. They also have a motive to destroy evidence of their illegal conduct, as happened here. Mr. Younes is seeking to take advantage of the absence of records and other physical evidence – an absence which he himself caused – and asks that summary judgment be awarded in his favor, based solely on his self-interested denials. The Court should not condone this result. Counterfeiters are not permitted to shift liability to shell companies or uncollectable persons by refusing to keep records and destroying unfavorable evidence. Granting summary

---

[1] Although it is not necessary for Coach to pierce the corporate veil in this case, Coach notes that the evidence provided by Mr. Younes regarding the observance of corporate formalities and related issues is, again, merely his self-interested testimony. Whether the corporation was used to intentionally commit fraud, for example, is dependent on the jury's findings with respect to Mr. Younes' intent. Summary judgment is likewise inappropriate on the veil-piercing counts as well.

[2] Coach notes that, even if Mr. Younes somehow avoided actual knowledge of the counterfeiting by being willfully blind and not asking questions, this would not be sufficient to avoid liability. *See Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) (holding that willful blindness is sufficient to establish knowledge of trademark infringement).

judgment to Mr. Younes would reward this behavior, and therefore encourage defendants in other cases to do likewise.

WHEREFORE, for the reasons set forth above, Coach requests that Mr. Younes' Motion for Summary Judgment be denied.

Dated:  August 1, 2012

          /s/ Joe Sadler
Joe Sadler (P71829)
Katherine L. Brooks (P74511)
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI  49503-2487
616-752-2271
jsadler@wnj.com
kbrooks@wnj.com
*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

Joe Sadler states that on the 1st day of August, 2012 he caused to be served a copy of the within Response to Motion for Summary Judgment upon defense counsel listed above via ECF filing of the Court.

          /s/ Joe Sadler
Joe Sadler

8490263-3